[Cite as *Sinkovitz v. Sinkovitz*, 2016-Ohio-2861.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| DELIA (DEE) M. SINKOVITZ, | : | Case No. 15CA18 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| PAUL SINKOVITZ, | : | |
| Defendant-Appellant. | : | RELEASED 05/02/2016 |

_____

APPEARANCES:[1]

Paul Sinkovitz, Lancaster, Ohio, pro se appellant.

_____

Hoover, J.

{¶ 1} This is an appeal from a judgment entered by the Hocking County Common Pleas Court, Domestic Relations Division, awarding plaintiff-appellee, Delia (Dee) M. Sinkovitz ("appellee"), a divorce on the grounds of gross neglect of duty and extreme cruelty. The judgment also sets forth the division of property, payment of financial obligations, spousal support, attorney's fees, court costs, and issues a final divorce decree.

{¶ 2} On appeal, defendant-appellant Paul Sinkovitz ("appellant"), asserts in his first assignment of error that the trial court erred in denying his motion that he, a prisoner, be transported to the court to participate in the final divorce hearing, or in the alternative, that he be

---

[1] Appellee has not filed an appellate brief in this appeal. If an appellee fails to file an appellate brief, App.R. 18(C) authorizes us to accept an appellant's statement of facts and issues as correct, and then reverse a trial court's judgment as long as the appellant's brief reasonably appears to sustain such action. *See State v. Miller*, 110 Ohio App.3d 159, 161–162, 673 N.E.2d 934 (4th Dist.1996). In other words, an appellate court may reverse a judgment based solely on a consideration of an appellant's brief. *See Helmeci v. Ohio Bur. of Motor Vehicles*, 75 Ohio App.3d 172, 174, 598 N.E.2d 1294 (6th Dist.1991); *Ford Motor Credit Co. v. Potts*, 28 Ohio App.3d 93, 96, 502 N.E.2d 255(10th Dist.1986); *State v. Grimes*, 17 Ohio App.3d 71, 71–72, 477 N.E.2d 1219 (12th Dist.1984). In the case at bar, despite appellee's failure to file an appellate brief, we will consider the entire record and will not dispose of this case based solely on consideration of appellant's brief.

permitted to participate via telephone. First, appellant, as an incarcerated prisoner, had no absolute due process right to attend the final divorce hearing. Moreover, because he was represented by counsel at the final divorce hearing, and because he was permitted to present his deposition testimony to the trial court, the trial court did not err in declining his request for telephone participation. We thus overrule appellant's first assignment of error.

{¶ 3} In his second assignment of error, appellant contends that the trial court abused its discretion in ordering him to pay a portion of appellee's attorney's fees and costs. However, a review of the record in this case reveals numerous and oftentimes frivolous filings by the appellant. These filings prolonged litigation and contributed to appellee's attorney's fees. Therefore, we cannot say the trial court abused its discretion in ordering the partial payment of appellee's attorney's fees and costs. We overrule this assignment of error.

{¶ 4} Appellant claims in his third assignment of error that the trial court erred in awarding appellee spousal support. Because the R.C. 3105.18(C)(1) factors support the award, we cannot find that the trial court abused its discretion. Thus, we overrule his third assignment of error.

{¶ 5} In his fourth assignment of error, appellant argues that the trial court's property division constituted an abuse of discretion. Upon review, it is clear that the trial court divided the marital assets and liabilities equally; and this division is reasonable and equitable. We overrule his fourth assignment of error.

{¶ 6} In his fifth assignment of error, appellant contends that the trial court erred by failing to distinguish between the marital property and separate property of the parties, and by failing to place a value on the items of marital property. Because appellant failed to raise these

specific arguments when he filed his objections to the magistrate's decision, he may not raise them for the first time on appeal. Consequently, he has waived the issues for appellate review. Moreover, he does not claim or establish plain error. Appellant's fifth assignment of error is overruled.

{¶ 7} Therefore, having overruled all of appellant's assignments of error, we affirm the judgment of the trial court.

## I. Facts and Procedural Posture

{¶ 8} Appellant and appellee married in October 1989. Two children were born as issue of the marriage. Both children are now adults.

{¶ 9} Appellant was jailed in November of 2012 after he choked appellee and fired a gun at appellee. Appellant was eventually convicted of felonious assault with a gun specification and of domestic violence. He was sentenced to serve an aggregate of 7 years in prison.

{¶ 10} Appellee commenced the action below on February 11, 2013, seeking a divorce from appellant, an equitable division of property, and an award of attorney's fees. On February 28, 2013, appellee filed an amended complaint adding a claim for spousal support. Appellant was incarcerated during the proceedings below; and he has remained incarcerated throughout this appeal.

{¶ 11} During the pendency of the case below, appellant filed numerous motions related to the divorce, including a motion to make alternative appearance. Through the motion to make alternative appearance appellant requested that he be allowed to appear at the final divorce hearing via telephone. The trial court denied the motion. Later, after the final divorce hearing had

been continued to a later date, and after he had acquired legal counsel for purposes of the final

divorce hearing, appellant filed a motion seeking permission to appear at the final divorce

hearing and for an order of transport from the Southeastern Correctional Institute to the trial

court. The trial court denied the motion via judgment entry, but the entry informed appellant's

counsel that he could take appellant's deposition for use at the hearing. Appellant was, in fact,

deposed by his counsel and a transcript of the deposition was filed with the trial court prior to the

final divorce hearing.

{¶ 12} The final divorce hearing was held before the magistrate on October 27, 2014.

Appellant was not present at the hearing, but was represented by counsel. Appellee was present

and was represented by counsel. At the hearing the trial court heard testimony from appellee,

from witnesses of both parties, and examined and admitted certain exhibits presented by both

parties.

{¶ 13} In January 2015, the magistrate issued a decision granting appellee a divorce

based on extreme cruelty and gross neglect of duty. The magistrate also found that the parties

owned a substantial amount of real estate in Hocking County that was purchased during the

marriage. However, the magistrate found that the parcels of real estate were in poor condition

and were encumbered by various liens. The magistrate also found that the parties own seven oil

and gas wells, but noted that the value of the wells were speculative because "there were no

production records available and they may need to be plugged." The magistrate noted that after

plugging the wells, the remaining equipment "may net the parties [between] $20-25,000."

Finally, the magistrate found that there were a number of buildings on the parcels of land owned

by the parties that are "stuffed full" of personal property acquired during the marriage.

Furthermore, the magistrate found that numerous "junk vehicles" and other assorted items are

littered across the parcels of property, and that much of those items have no value and would need to be hauled away.

{¶ 14} In addition to granting appellee a divorce and enumerating the findings of fact described above, the magistrate's decision also set forth a division of property and financial obligations. The magistrate determined that appellant's military pension was separate property earned by appellant prior to the marriage. He also determined that any coins found on the property were the separate property of appellant. However, the magistrate determined that "all other property, the land, oil wells, accounts, and personal property, and debts * * * [were] marital property and debts * * * acquired during the marriage". The magistrate then determined that given the condition and speculative value of the property, the most equitable way to determine value and distribute any equity to the parties would be by sale of the property. Thus, the magistrate ordered that the land, buildings, and wells be sold by a realtor of appellee's choosing; and if they could not be sold within six months, as is, then they should be sold at auction. The magistrate also ordered that the remaining marital property be sold at auction. The magistrate also devised a method that would allow the parties to retain certain items of personal property prior to the auction of the items. Specifically, the magistrate ordered as follows:

> 14 days prior to an auction of the personal property, the wife and any other person(s) she chooses shall meet with counsel for the defendant and any person(s) he and his client choose to pick personal property they wish to keep. A coin shall be flipped by Husband's counsel to decide who picks first. Heads, Husband's representative chooses first, tails Wife chooses first. They shall alternate until they have picked up to a 100 items. If one stops short of 100 items, then the other can continue to pick up to 100 items. The items shall be removed prior to the

auction or are subject to sale in the auction. Lists of the items picked and removed prior to auction shall be compiled with one copy filed with the Court of each list for the record[.]

The magistrate also ordered that all proceeds from the sale of the marital property should be used to pay marital debts, and any remaining equity after the payment of debts was to be equally split by appellant and appellee. With regards to retirement, the magistrate determined that each party should keep their respective social security benefits; and that besides the previously mentioned military pension, no other pension or accounts existed.

{¶ 15} With regards to spousal support, the magistrate determined, after a lengthy written analysis, that an award was warranted and ordered appellant to pay appellee $600 a month for an indefinite period of time. The magistrate also ordered that appellant pay appellee $2,500 in attorney's fees and $1,500 in costs/fees. In awarding attorney's fees and costs, the magistrate noted appellant's uncooperative attitude that resulted in prolonged litigation.

{¶ 16} Appellant filed objections to the magistrate's decision with a supporting memorandum. Specifically, appellant raised the following objections: (1) the magistrate erred in awarding appellee spousal support of $600 per month; (2) the magistrate erred in ordering the sale of all marital property because he is incarcerated and cannot retrieve items of personal property per method prescribed by magistrate; (3) the magistrate decision "is a total disregard of fairness unprecedented" because appeals of his criminal conviction remained unresolved; and (4) the magistrate erred by awarding appellee attorney's fees. Appellant also filed a motion to modify the spousal support award, but the trial court denied the motion.

{¶ 17} In June 2015, the trial court denied appellant's objections to the magistrate decision. Also in June 2015, the trial court entered a final divorce decree granting the parties a divorce based on extreme cruelty and gross neglect of duty. The final divorce decree is very similar to the magistrate's decision and sets forth an identical division of property, payment of financial obligations, determination of spousal support, and determination of attorney's fees/costs. The final divorce decree also indicated that the trial court adopted and fully approved the magistrate's decision.

{¶ 18} This appeal ensued.

## II. Assignments of Error

{¶ 19} On appeal, appellant asserts five assignments of error for review:

First Assignment of Error:

> The Trial Court erred in not granting Defendants (sic) motion to be present at the Divorce Hearing of this case via telephone or video conference.

Second Assignment of Error:

> Whether trial Court abused its discretion in awarding Defendant (sic) $4,000 in attorney fees and costs. The fees are arbitrary and unreasonable in the circumstances.

Third Assignment of Error:

> Whether trial court committed an abuse of discretion when it awarded Appellee Spousal Support in lieu of an excessive distribution of the marital property.

Fourth Assignment of Error:

> Whether the trial court abused its discretion when it failed to divide marital property equally as required pursuant to R.C. 3105.171.

Fifth Assignment of Error:

> Whether the trial court abused its discretion in determining and dividing premarital property.

## III. Law and Analysis

{¶ 20} Analysis of appellant's assignments of error will be conducted in logical rather than numerical order.

### A. Appellant's Appearance at the Final Divorce Hearing

{¶ 21} In his first assignment of error, appellant contends that the trial court erred in denying his motion to convey him from prison to the trial court for the final divorce hearing or, in the alternative, his motion to participate in the hearing by telephone conference. He argues that the proceedings below were "highly unfair and abusive", and had he been able to participate at the final divorce hearing he "could have rendered information vital to [the] defense of his property, pension and payment of financial obligations", including testimony regarding "the accurate market value of his property".

{¶ 22} " 'As an incarcerated prisoner, [appellant] had no absolute due process right to attend a civil trial to which he was a party.' " *Pryor v. Pryor*, 4th Dist. Ross No. 09CA3096, 2009-Ohio-6670, ¶ 29, quoting *Lopshire v. Lopshire*, 11th Dist. Portage No. 2008-P-0034, 2008-Ohio-5946, ¶ 35. " 'There is no support in the Constitution or in judicial precedent for the proposition that a prisoner has an absolute due process right to attend the trial of a civil action to which he is a party.' " *Rowe v. Stillpass*, 4th Dist. Lawrence No. 06CA1, 2006-Ohio-3789, ¶ 21, quoting *Matter of Vandale*, 4th Dist. Washington No. 92CA31, 1993 WL 235599, *2 (June 30, 1993). " 'A ruling on the request of an incarcerated criminal to prosecute a * * * civil action by requiring penal authorities to transport him to a preliminary hearing or trial rests within the sound discretion of the trial court.' " *Abuhilwa v. Board*, 4th Dist. Pickaway No. 08CA3, 2008-Ohio-5326, ¶ 7, quoting *Mancino v. City of Lakewood*, 36 Ohio App.3d 219, 221, 523 N.E.2d 332 (8th Dist.1987). An abuse of discretion connotes that the court's attitude is arbitrary,

unreasonable, or unconscionable. *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, ¶ 35, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} Here, while the trial court did not permit appellant to physically attend the final divorce hearing, it did permit appellant the opportunity to present deposition testimony. In fact, appellant was deposed, a transcript of his deposition was filed with the trial court, and a review of the record indicates that the trial court considered the deposition testimony when making its final rulings. We also disagree with appellant's contention that he was not afforded the opportunity to testify in regards to the value of his property, pension, and financial obligations. A review of the deposition transcript reveals that appellant did address and place values on the real estate and personal property. He also testified, to the best of his ability, regarding the financial obligations of the parties and the value of his pension.

{¶ 24} In his appellate brief, appellant relies upon *Shepard Grain Co. v. Creager,* 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392 (2d Dist.), *Laguta v. Serieko*, 48 Ohio App.3d 266, 549 N.E.2d 216 (9th Dist.1988), and *Elkins v. Elkins*, 12th Dist. Clermont No. CA98-03-019, 1999 WL 939 (Jan. 4, 1999), for the proposition that "[w]hen prisoners are involved in civil actions in Courts and the Court does not find it appropriate to transport the prisoner to the Courthouse, a trial Court should consider innovative ways for the prisoner to participate in the action, such as telephone conference calls, rather than rendering judgment against the prisoner, especially if the prisoner suggest an alternative means of participation." Appellant's Brief at pp. 3-4; *see also Creager* at ¶ 24, citing *Laguta* and *Elkins* (setting forth a nearly identical proposition of law). However, *Creager*, *Laguta*, and *Elkins* are factually distinguishable from the case sub judice. In those cases, the prisoners were not represented by counsel at any stage of the proceedings and were not provided an alternative means of presenting

evidence. Meanwhile, in the present case, appellant was represented by counsel at the final divorce hearing, and as already discussed, appellant's deposition testimony was presented to the trial court per the trial court's suggestion. Given these circumstances, appellant's reliance on *Creager*, *Laguta*, and *Elkins* is misplaced.

{¶ 25} In light of the foregoing, we find that the trial court did not abuse its discretion in denying appellant's motion to convey or in denying his motion to attend via telephone conference. Appellant's first assignment of error is accordingly overruled.

### B. Marital Versus Separate Property and Valuation of Property

{¶ 26} In his fifth assignment of error, appellant contends that the trial court erred by failing to distinguish between the marital property of the parties and the separate property of the parties. Appellant also contends, through his fifth assignment of error, that the trial court erred by failing to value each item of marital property.

{¶ 27} "Under R.C. 3105.171(B), the trial court must determine what constitutes marital property and what constitutes separate property." *Burriss v. Burriss*, 4th Dist. Lawrence Nos. 09CA21 and 10CA11, 2010-Ohio-6116, ¶ 22. This is so because "the court shall disburse a spouse's separate property to that spouse." R.C. 3105.171(D). Furthermore, "[b]efore a trial court can distribute property, the court must value that property. Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." *Burriss* at ¶ 27.

{¶ 28} "A party forfeits or waives the right to challenge the trial court's adoption of a factual finding or legal conclusion unless the party objects in accordance with Civ.R. 53(D)(3)(b)." *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶ 17, citing Civ.R. 53(D)(3)(b)(iv); *State ex rel. Muhammad v. State,* 133 Ohio St.3d 508, 2012–Ohio–4767,

979 N.E.2d 296, ¶ 3 (appellant waived claim on appeal by failing to specifically raise claim in his objections to the magistrate's decision in the trial court); *Liming v. Damos,* 4th Dist. Athens No. 08CA34, 2009–Ohio–6490, ¶ 14.

{¶ 29} "Under Civ.R. 53(D)(3)(b)(i), a party must file objections within 14 days of the filing of the magistrate's decision." *Faulks* at ¶ 18. "The objections must be 'specific and state with particularity all grounds for objection.' " *Id.*, quoting Civ.R. 53(D)(3)(b)(ii). "For objections to findings of fact, they must be 'supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.' " *Id.*, quoting Civ.R. 53(D)(3)(b)(iii). " 'Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).' " *Id.*, quoting Civ.R. 53(D)(3)(b)(iv). " 'In essence, the rule is based on the principle that a trial court should have a chance to correct or avoid a mistake before its decision is subject to scrutiny by a reviewing court.' " *Liming* at ¶ 14, quoting *Barnett v. Barnett,* 4th Dist. Highland No. 04CA13, 2008–Ohio–3415, ¶ 16.

{¶ 30} In his objections to the magistrate's decision, appellant did not raise the issues now raised on appeal, i.e. the issues regarding the characterization of property as either marital or separate, and the valuation of the marital property. Thus, he forfeited or waived this claim, except for plain error. Civ.R. 53(D)(3)(b)(iv).

{¶ 31} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to

which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 32} Here, appellant does not acknowledge his failure to raise these issues in his objections to the magistrate's decision; and he does not assert plain error. Moreover, while he makes a blanket assertion in his appellate brief that the trial court "never considered the separate property that the Appellant acquired prior to his marriage to the Appellee", a review of the final divorce decree suggests otherwise. For instance, in the final divorce decree the trial court ordered that "[a]ny coins found on the property shall be [appellant's] separate property." Thus, it appears that the trial court did consider whether any of the property was separate property. We also note that appellant does not cite any record evidence in support of his argument, nor has he identified any items of property he alleges is separate property. *See* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). Thus, it is unclear what property appellant even contends was wrongfully classified. Finally, with regards to his valuation argument, because the marital property was ordered to be sold and the proceeds to be used to satisfy marital debt, and any remaining proceeds to be split equally among the parties, we fail to see how the trial court's failure to value the property seriously affects the basic fairness, integrity, or public reputation of the judicial process.

{¶ 33} Because appellant has not established plain error in the trial court's property determinations, we overrule his fifth assignment of error.

**C. Property Division**

{¶ 34} In his fourth assignment of error, appellant contends that the trial court erred by rendering an inequitable division of marital property. In support of this assignment of error, appellant again argues that had he been able to appear at the final hearing via telephone or other means he would have been able to give a more accurate value of the property. Appellant also argues that appellee received more than half of the marital property, thus making the distribution of property inequitable. Finally, appellant argues that the trial court failed to consider and use the factors set forth in R.C. 3105.171(F) in making its division of marital property.

{¶ 35} Trial courts must divide marital property equitably between the spouses. R.C. 3105.171(B). Usually, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). "However, if the trial court determines that an equal division would produce an inequitable result, it must divide the property in a way it deems equitable." *O'Rourke v. O'Rourke,* 4th Dist. Scioto No. 08CA3253, 2010–Ohio–1243, ¶ 15; R.C. 3105.171(C)(1). Because we afford the trial court great discretion in reaching an equitable distribution, we will not reverse its division of property absent an abuse of discretion. *O'Rourke* at ¶ 15. An appellate court reviewing whether a trial court abused its discretion when dividing marital property must view the property division in its entirety and consider the totality of the circumstances. *Briganti v. Briganti,* 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984); *Byers v. Byers,* 4th Dist. Ross No. 09CA3124, 2010–Ohio–4424, ¶ 19.

{¶ 36} In determining the equitable division of the marital property, the court must consider the factors listed in R.C. 3105.171(F). However, R.C. 3105.171 "does not require the trial court to address each statutory factor in its written findings of fact. In the absence of an affirmative showing * * * that the court failed to consider the factors, we presume that the trial

court followed the statute." (Citations omitted.) *Eddy v. Eddy,* 4th Dist. Washington No. 01CA20, 2002–Ohio–4345, ¶ 60. Thus, while a court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair and equitable, it "need not explain in minute detail its reasoning." *Cope v. Guehl,* 7th Dist. Columbiana No. 07 CO 35, 2009–Ohio–2891, ¶ 38.

{¶ 37} Here, the trial court made an equal division of all assets and liabilities to the parties by ordering the liquidation and sale of all marital property and by ordering that the proceeds be used to satisfy marital debt. The trial court also ordered that the parties equally split any remaining proceeds, after the satisfaction of debt. Thus, appellant's assertion that the trial court awarded appellee more than half of the marital property is misplaced. Moreover, the record in this case supports the trial court's decision to liquidate the property and equally divide the proceeds. At the hearing, several witnesses testified that the real estate parcels were littered with "junk", and burdened by tax and other liens. It was also adduced that the marital home was without gas for heat and other home appliances, and without water. The value of the oil and gas wells owned by the parties was also called into question, because the wells had been mostly abandoned upon appellant's incarceration and no production records were made available to the trial court. The last operator of the wells, who had assumed operating duties for a short time following appellant's incarceration, testified that the wells were producing more salt-water than oil or gas. It was also learned that the wells may need to be plugged at a substantial cost and that several contractors were owed money as a result of performing maintenance on the wells. There was also substantial evidence presented that the parties had accumulated a large sum of marital debt including, inter alia, at least two mortgage loans and several hefty credit card debts. Appellee testified that despite her best efforts she could no longer afford mortgage payments on

the marital residence or payments on the marital credit cards, and that she was in the process of declaring bankruptcy. Most of the parties' personal property was described as "junk", with little value other than scrap value.

{¶ 38} Based on the totality of the record, ample evidence exists supporting the trial court's decision that liquidation was the most desirable and equitable course of action. Although the trial court did not explicitly cite the R.C. 3105.171(F) factors in the divorce decree, it did provide sufficient reasoning for its decision regarding the property division. While the parties owned a significant amount of marital property, they also had accumulated a significant amount of marital debt. In addition, given the condition of the property, the current financial situations of the parties, and the parties' inability to properly maintain the property, the trial court could have reasonably concluded that liquidating the property and equally dividing the proceeds was the most equitable division available. Moreover, appellant's argument that he could have given a more detailed account of the property values had he been permitted to appear at the final hearing is also without merit for the reasons previously stated. Accordingly, we find that the trial court's division of property was reasonable and not an abuse of discretion. Appellant's fourth assignment of error is overruled.

### D. Spousal Support

{¶ 39} In his third assignment of error, appellant contends that the trial court abused its discretion when it awarded appellee spousal support because he is incarcerated and thus, according to him, unable to pay spousal support. He also contends that after the final divorce decree was released ordering that he pay spousal support, he was served with a property tax assessment in the sum of $23,735, thus "greatly reduc[ing] his ability to pay spousal support".

{¶ 40} "Trial courts generally enjoy broad discretion to determine spousal support issues." *Bolender v. Bolender*, 4th Dist. Adams No. 13CA984, 2014-Ohio-2136, ¶ 15. "Consequently, an appellate court will not reverse a trial court's spousal support decision absent an abuse of discretion." *Id*., citing *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 24, 550 N.E.2d 178 (1990); *Holcomb v. Holcomb,* 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶ 41} R.C. 3105.18(B) allows trial courts, upon a party's request and after property distribution, to award reasonable spousal support. R.C. 3105.18(C) states:

(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

(2) In determining whether spousal support is reasonable and in determining the
amount and terms of payment of spousal support, each party shall be considered
to have contributed equally to the production of marital income.

{¶ 42} "When making a spousal support award, a trial court must consider all statutory factors and not base its determination upon any one factor taken in isolation." *Bolender* at ¶ 17, citing *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. "Although a trial court possesses broad discretion to determine whether spousal support is reasonable and appropriate, it must consider the statutory factors and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law." *Id.*, citing *Kaechele* at paragraph two of the syllabus.

{¶ 43} During the final divorce hearing, evidence was presented pertaining to the applicable spousal support factors listed in R.C. 3105.18(C). For instance, it was learned that both appellant and appellee had some employment during the marriage. Appellant had regular employment until 2001 when his job at Techno Glass was terminated. After 2001, appellant had received additional education but was never employed outside the home. Rather, in the years after 2001 appellant mostly engaged in oil and gas production. Appellee, on the other hand, was employed at the time of the hearing at Walmart. She earns $12.10 per hour, and works 32-40 hours per week. Prior to his arrest, appellant was also collecting social security income, income from his military pension, and income from his retirement from Techno Glass. Due to his incarceration, appellant no longer receives social security income; however, he continues to collect approximately $1,200-$1,300 per month from his military pension, and $98.50 per month from Techno Glass. He also earns $18 per month while in prison.

{¶ 44} It was also gleaned at the final hearing that since appellant's incarceration, appellee has been unable to pay the marital debts. Appellee also lacks the knowledge or ability to operate the oil and gas wells. Appellee was 57 years old at the time of the hearing and suffers some knee problems. Appellant was 67 years old at the time of his deposition. Appellant was active, as evidenced from his operation of the oil and gas wells, up until the time of his arrest.

{¶ 45} Based on the record before us, we find that the trial court's award of spousal support in the amount of $600 per month to appellee was not unreasonable. Appellant and appellee were married for 25 years; a significant amount of years in this court's determination. Appellant continues to derive significant income from his military pension while living relatively cost-free in prison. Appellee, on the other hand, has been forced to provide for herself and without the benefit of appellant's oil and gas business. With the sale of the marital home, appellee will likely be burdened with new rent expenses. Furthermore, because of the significant marital debts, the liquidation of the marital property will not likely provide any proceeds to aid appellee in the costs of day-to-day living. Appellant's actions and resulting incarceration has also contributed to appellee's current economic hardships. Without appellant's ability to maintain and operate the oil and gas wells, the wells have stopped producing income; and the property on which they sit has diminished in value. In short, appellee did rely upon the appellant during their marriage to help pay the bills and to maintain their lifestyle.

{¶ 46} Furthermore, we are also not persuaded by appellant's argument that his incarceration renders him unable to pay spousal support. The trial court determined that his military pension was separate property; and he continues to receive a monthly pension between $1,200-$1,300 while in prison. It is clear from the record that the trial court considered appellant's military pension income when it determined to award spousal support. R.C.

3105.18(C)(1)(a) requires trial courts to consider the parties' income "from all sources". Thus, we do not agree with appellant's contention that his incarceration renders him unable to pay spousal support.

{¶ 47} Finally, we note that appellant has attached to his appellate brief a recent property tax assessment. However, because the tax assessment was not evidence before the trial court we may not consider it in determining whether the spousal support award was proper. *See* App.R. 12(A) (appellate court review is confined to the record before it, as defined in App.R. 9(A)); *State v. Martin*, 4th Dist. Scioto No. 04CA2946, 2005-Ohio-4059, ¶ 11 ("[W]e cannot consider exhibits attached to briefs that are not part of the record on appeal."); *Napper v. Napper*, 3d Dist. Allen No. 1-02-82, 2003-Ohio-2719, ¶ 5 ("[A]n appellate court's review is strictly limited to the record that was before the trial court, no more and no less.").

{¶ 48} Having considered the totality of the circumstances, we do not find that the trial court's award of spousal support was an abuse of discretion. Accordingly, we overrule appellant's third assignment of error.

### E. The Attorney's Fees Award

{¶ 49} In his second assignment of error, appellant contends that the trial court erred by ordering him to pay $4,000 of appellee's attorney's fees and costs. Specifically, appellant contends such award is inequitable because appellee possesses sufficient funds to pay her litigation fees and because appellee is currently earning a greater income than he due to his incarceration.

{¶ 50} "The decision to award attorney fees in a divorce action is vested in the sound discretion of the trial court and we will not reverse it absent an abuse of that discretion."

*O'Rourke*, 2010–Ohio–1243, at ¶ 30, citing *Parker v. Parker,* 10th Dist. Franklin No. 05AP-1171, 2006–Ohio–4110, ¶ 36. "Under R.C. 3105.73(A), 'a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable.' " *Bray v. Bray,* 4th Dist. Ross No. 10CA3167, 2011–Ohio–861, ¶ 45. The court may consider " 'the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.' " *Id.,* quoting R.C. 3105.73(A).

{¶ 51} Here, we believe that the record supports the trial court's decision to award appellee attorney's fees and costs. During the course of the proceedings, appellant filed numerous documents and motions with the trial court requiring appellee's counsel to respond in kind. While some of these filings were relevant to the proceedings, many were mere attempts to reargue his criminal trial. Other filings were nonsensical. Appellee's counsel was forced to file several motions requesting that appellant be ruled a vexatious litigator. "When the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion." *Babka v. Babka,* 83 Ohio App.3d 428, 435, 615 N.E.2d 247 (9th Dist.1992). Given the totality of these circumstances, the trial court could have rationally concluded that the equitable result would be to order appellant to contribute $4,000 towards appellee's attorney's fees and costs. Accordingly, we overrule appellant's second assignment of error.

### IV. Conclusion

{¶ 52} Based on the foregoing, we overrule all of appellant's assignments of error; and we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY: _____
       Marie Hoover, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**