[Cite as *Clyburn v. Clyburn*, 2025-Ohio-1759.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | |
|---|---|
| BRANDON CLYBURN | : |
| | : |
| Appellant | :    C.A. No. 2024-CA-34 |
| | : |
| v. | :    Trial Court Case No. 2024 DR 78 |
| | : |
| MEGAN M. CLYBURN | :    (Appeal from Common Pleas Court- |
| | :    Domestic Relations) |
| Appellee | : |
| | : |

· · · · · · · · · · ·

O P I N I O N

Rendered on May 16, 2025

· · · · · · · · · · ·

MARK M. FEINSTEIN, Attorney for Appellant

TERRI L. PARMLEY, Attorney for Appellee

· · · · · · · · · · · ·

EPLEY, P.J.

{¶ 1} Plaintiff-Appellant Brandon Clyburn appeals from the judgment of the Champaign County Domestic Relations Court which awarded a dog to Defendant-Appellee Megan M. Clyburn as property in the couple's divorce. For the reasons that

follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} Brandon and Megan Clyburn were married in Urbana on October 6, 2018. The couple had no children, but in May 2019, they purchased a dog. The dog, which they named Violet, was thought to be a "teddy bear breed" (a Maltese/Shih-Tzu mix), but it turned out to be a mutt. Despite its non-designer bloodline, Violet was loved by both parties.

{¶ 3} A few months after welcoming the dog into the family, Brandon and Megan moved in with Brandon's 84-year-old grandfather to help with his healthcare needs. Brandon's grandfather often took care of Violet during the day as Brandon and Megan were at work and school, respectively, and he became attached to the dog. Brandon told the court that Violet became his grandfather's "child" and "emotion companion." Trial Tr. at 12-13. While Brandon's grandfather played an important role in Violet's life, Brandon and Megan were also very involved in taking care of the dog. Both took Violet to the vet, both helped with potty training, and both walked and fed the dog. On the other hand, only Brandon was listed as the owner on Violet's license and registration, and only Megan was registered as the owner for the microchip.

{¶ 4} At some point, the relationship between Brandon and Megan broke down, and she moved out early in 2024. At the beginning of their separation, the parties agreed to a type of "shared custody" arrangement for Violet; each would keep the dog for a week at a time. This was short-lived, however, and Violet ended up permanently with Megan. The parties gave different reasons for the cessation of the arrangement.

{¶ 5} On March 25, 2024, Brandon filed a complaint for divorce. By the time of the final hearing on October 16, 2024, there was agreement on all issues except who should be awarded the dog. At the hearing, the court heard testimony from both Brandon and Megan. A few weeks later, the court determined that, while both parties loved Violet, Megan was more involved with her on a daily basis, and it found it more equitable to award the dog to her. Entry at 2.

{¶ 6} Brandon has filed an appeal with two assignments of error.

## II.    Marital Property

{¶ 7} In his first assignment of error, Brandon argues that the trial court "used none of the factors listened in R.C. 3105.171(F)(1) through (9), and the 'catch-all' factors upon which the [trial court] stated it relied . . . were unsupported by the record." Appellant's Brief at 7.

{¶ 8} In Ohio, "marital property" is defined as all real and personal property, including retirement benefits, that is owned by either or both spouses and was acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3)(a). "During the marriage" is the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation. R.C. 3105.171(A)(2)(a).

{¶ 9} Marital property does not include "separate property" – property acquired before the marriage, property acquired by inheritance or gift to one spouse, passive income and appreciation from separate property, property acquired after a decree of legal separation, property excluded by a valid antenuptial or postnuptial agreement,

compensation for personal injury (except for loss of marital earnings and expenses paid from marital assets), and any property proven by clear and convincing evidence to have been given to only one spouse. R.C. 3105.171.

{¶ 10} According to R.C. 3105.171(B), the trial court must "divide the marital and separate property equitably between the spouses." Division of the marital property must be equal "unless an equal division would not be equitable, in which case the court shall divide the property in a manner that it determines to be equitable." *James v. James*, 101 Ohio App.3d 668, 680 (2d Dist. 1995); R.C. 3105.171(C)(1). In making a division of property, the court must consider all relevant factors. R.C. 3105.171(C)(1). Those factors include:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F)(1)-(10). When reviewing the trial court's division of marital property, the appellate court is limited to determining whether, "considering the totality of the circumstances, the trial court abused its discretion in fashioning the award." *Sinkovitz v. Sinkovitz*, 2016-Ohio-2861, ¶ 36 (4th Dist.).

{¶ 11} Brandon contends that the court did not engage in the required analysis, and it appears he came to this conclusion because the court did not list any of the factors in its decision. But the statute "does not require the trial court to address each statutory factor in its written findings of fact. In the absence of an affirmative showing . . . that the court failed to consider the factors, we presume that the trial court followed the statute." (Citations omitted.) *Eddy v. Eddy*, 2002-Ohio-4345, ¶ 60 (4th Dist.). While a trial court must indicate the basis for its division of marital property in enough detail to allow an appellate court to determine whether the award is fair and equitable, it does not need to explain every detail of its reasoning. *Sinkovitz* at ¶ 36.

{¶ 12} In its decision and entry, the court noted that Brandon and Megan purchased the dog together during their marriage, making it marital property. It also found

that while Violet was registered under Brandon's name, "[b]oth parties played with the dog, fed it, took it for walks, [and] took it to the vet." The court stated, however, that it appeared Megan had been more involved in the day-to-day care of Violet than Brandon. It further believed that, although Brandon loved the dog, he wanted it more for a companion for his grandfather than for himself, and it noted that Brandon had already purchased a new dog. That is in contrast to Megan, who stated that Violet was "like her child and kind of a therapy dog for her, helping her to cope with the stress of her job[.]" Entry at 2. Ultimately, because the court thought Megan was more involved with Violet on a daily basis, it found it more equitable to award the dog to her.

{¶ 13} Based on the record and the reasons delineated in the court's journal entry, we cannot say that the trial court abused its discretion when it found it equitable to award the dog to Megan. The first assignment of error is overruled.

### III. Half the dog's value

{¶ 14} In his second assignment of error, Brandon asserts that even if the trial court did not err when it awarded Violet to Megan, he should have been awarded half of the value of the dog. We disagree.

{¶ 15} Prior to the October 16, 2024 hearing, the parties notified the court that they had agreed on all matters except for the "custody" of Violet; the court's task, therefore, was limited to making that determination. Neither Brandon nor Megan asked the court to award half of the dog's value to the losing party or presented any evidence as to its value outside of Megan's passing comment that they gave the breeder $400 in a CVS parking lot. "It is settled law that issues raised for the first time on appeal and not having been

raised in the trial court are not properly before this court and will not be addressed." *State v. Schneider*, 1995 WL 737910, *1 (2d Dist. Dec. 13, 1995). It is also true that "[w]hen a party fails to provide the court with evidence as to the value of an item, the party may be found to have waived the right to appeal with regard to that asset." *Smith v. Smith*, 2017-Ohio-44, ¶ 26 (6th Dist.); *Gray v. Gray*, 2011-Ohio-4091, ¶ 15 (8th Dist.) ("when a party fails to present evidence as to the value of an item, it is akin to an invited error and that party has waived the right to appeal in regard to that asset.").

**{¶ 16}** Because Brandon presented no evidence of Violet's value at the hearing in the trial court and because he did not raise this issue below, he cannot do so now for the first time. The second assignment of error is overruled.

### IV. Conclusion

**{¶ 17}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HUFFMAN, J. and HANSEMAN, J., concur.