[Cite as *Moroney v. Pfiefer*, 2013-Ohio-5653.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JOEL DAVID MORONEY, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-L-051** |
| JAMIE MICHELLE PFEIFER, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 12 DR 000010.

Judgment: Affirmed.

*Carole Jo Hanzes Moroney,* 629 West Acadia Point, Aurora, OH 44202 (For Plaintiff-Appellant).

*Carl L. DiFranco,* Cannon, Aveni, & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Joel David Moroney, appeals the Judgment Entry of Divorce, rendered by the Lake County Court of Common Pleas, Domestic Relations Division, terminating his marriage with defendant-appellee, Jamie Michelle Pfeifer, and dividing the marital estate. The issues before this court are whether the admission of unsworn witness testimony constitutes plain error; whether a trial court may allow a witness to testify by contemporaneous transmission from a location outside the court's territorial jurisdiction; whether a party is entitled to a divorce on the grounds of

abandonment when both parties have admitted incompatibility; and whether a trial court's division of marital property is equitable where the property is not sufficiently identified, there is contradictory evidence, and one party has violated a restraining order with respect to the property. For the following reasons, we affirm the judgment of the court below.

{¶2} On January 13, 2012, Moroney filed a Complaint for Divorce against Pfeifer on the grounds of gross neglect of duty, abandonment, and incompatibility.

{¶3} On June 5, 2012, Pfeifer filed an Answer and Counterclaim for Divorce, admitting that the parties are incompatible while denying the allegations of gross neglect of duty and abandonment, and seeking a divorce on the grounds of gross neglect of duty and incompatibility.

{¶4} On July 3, 2012, Moroney filed a Reply to Counterclaim, admitting that the parties are incompatible while denying the allegation of gross neglect of duty.

{¶5} Trial on the merits was scheduled for October 11, 2012.

{¶6} On September 19, 2012, Pfeifer filed an *Emergency* Motion to Excuse Personal Attendance, seeking leave of the domestic relations court to attend the trial "by video." As grounds for the Motion, Pfeifer argued that she presently resides in the United Kingdom and is unable to leave since Moroney "reported (falsely) to customs officials * * * that Defendant's work visa was obtained by deception."

{¶7} On October 3, 2012, Moroney sought a continuance of the October 11, 2012 trial date, on the grounds that he retained new counsel.

{¶8} On October 15, 2012, Moroney filed a Motion in Opposition to Defendant's *Emergency* Motion to Excuse Personal Attendance.

**{¶9}** On October 17, 2012, Pfeifer sought a continuance of trial scheduled for October 23, 2012, on the grounds that her immigration status remained unresolved.

**{¶10}** On November 9, 2012, Moroney filed a Brief in Support of Amended Motion in Opposition to Defendant's *Emergency* Motion to Excuse Personal Attendance.

**{¶11}** On November 27, 2012, Pfeifer filed a Second *Emergency* Motion to Excuse from Personal Attendance, on the grounds that "Plaintiff and [his] mother * * * have recently reported (falsely) to customs officials in the United Kingdom that Defendant's work visa was obtained by deception." Attached to the Motion was a letter from a firm (Bindmans LLP) representing Pfeifer in regard to her immigration status. Until matters were resolved, Pfeifer was advised not to travel outside of the United Kingdom.

**{¶12}** On December 3, 2012, a Magistrate's Order was issued, granting the Second *Emergency* Motion and ordering Pfeifer's counsel to make arrangements for video "in a manner which allows recording the proceedings."

**{¶13}** On December 5, 2012, Moroney filed a Plaintiff's Brief in Opposition to Defendant's Second *Emergency* Motion to Excuse from Personal Attendance.

**{¶14}** On December 20, 2012, trial was held on the merits of the divorce, with Pfeifer appearing from the United Kingdom by video teleconference.

**{¶15}** On January 9, 2013, a Magistrate's Decision was issued. The magistrate granted the parties a divorce on the grounds of incompatibility. The magistrate made the following findings, in relevant part, regarding the division of property.

**{¶16}** The evidence presented establishes the vast majority of the parties' personal property is in the United Kingdom. Plaintiff's Exhibit 3 is an affidavit of the plaintiff outlining the alleged property to which he

3

has an interest which is in the possession of defendant in the United Kingdom. The testimony presented did not address all of the property outlined. Defendant acknowledges she boxed property of plaintiff's and it is available for shipping to plaintiff upon his making arrangements and paying for shipping.

{¶17} Based on the limited evidence presented it is determined plaintiff is entitled to all of the property on the attached property list which is designated as "pre-marital purchases." Wife did not contest [that] husband received 2 ½ sets of Chef Analon cookware. All of the "pre-marital purchases" on the list and the Chef Analon cookware [identified in Exhibit 3 as "property bought during the marriage"] are awarded to plaintiff plus any other property which has been placed in boxes by defendant. The cost of shipping these items to plaintiff shall be his responsibility. Plaintiff to make arrangements within sixty days of the filing of the judgment entry of divorce to pay for and have the property shipped to him. Defendant to cooperate with plaintiff or any other person he designates to assist in the shipping or taking possession of said property.

{¶18} On January 23, 2013, Moroney filed Objections to Magistrate's Decision. Moroney raised the following objections:

{¶19} Plaintiff objects to the ruling that the ring was not intended as a gift, requiring Plaintiff to pay the balance of the ring debt, and allowing Defendant to keep the ring.

4

**{¶20}** Plaintiff objects to the ruling that Defendant shall keep all the marital property, excluding the Chef Analon Cookware.

**{¶21}** Plaintiff objects to the ruling that Plaintiff is fully responsible for the cost of shipping of all items he was awarded that are currently in the possession of the Defendant.

**{¶22}** Plaintiff objects to the ruling that Plaintiff must pay Defendant Attorney Fees in the amount of $850.

**{¶23}** Plaintiff objects to the ruling that Defendant was granted a divorce from the Plaintiff.

**{¶24}** On April 25, 2013, the domestic relations court issued a Judgment Entry, overruling Moroney's Objections. In relevant part, the court found:

**{¶25}** Husband next objects to the Magistrate deciding Wife is to retain the marital household goods other than the Chef Analon cookware. Husband overlooks Wife's testimony at trial [that] she had boxed his personal items, including his chef's knives, which are waiting to be shipped to him. Wife testified she did not have any address for Husband. As the Magistrate points out * * *, there was "limited evidence" as to the personal property Husband now claims he wants in his objection. Husband presented no evidence during trial to support his claim as to the bed, couch, Nespresso coffee maker, Kitchen Aid blender, custom made foam mattress, bed frame, bed linens, and Samsung flat screen television. In fact, Husband's Exhibit 3 lists the rings, Nespresso coffee maker, Kitchen Aid blender, and custom foam mattress as property bought during the marriage. Wife testified the couch belonged to a former flat mate; the

television was purchased by Husband and the former flat mate; the flat mate bought the bed. Wife testified these items remained in the flat at the time of trial. Husband's objection is not well taken.

* * *

**{¶26}** Husband's last objection is to his not receiving a divorce from Wife on the grounds of gross neglect of duty and/or abandonment. There was no evidence in the record whatsoever to support either ground. There was evidence as to criminal convictions of Husband which were drug related. The only ground which was supported by evidence in the record was as determined by the Magistrate. Husband's objection is not well taken.

**{¶27}** On May 2, 2013, the domestic relations court issued a Judgment Entry, adopting the Magistrate's Decision.

**{¶28}** On May 23, 2013, the domestic relations court issued a Judgment Entry of Divorce.

**{¶29}** On May 30, 2013, Moroney filed his Notice of Appeal. On appeal, Moroney raises the following assignments of error:

**{¶30}** "[1.] The trial court committed prejudicial error in allowing Defendant-Appellee to testify before the court without being properly sworn under oath on the record according to the Ohio Rules of Civil Procedure, or sworn in at all so that Defendant-Appellee could make statements that cannot be effectively cross-examined and the testimony was not subject to the rules of cross-examination."

**{¶31}** "[2.] The trial court committed prejudicial error in allowing a Defendant-Appellee not physically present in the State of Ohio to appear for testimony by

videoconference from the United Kingdom in England before a Magistrate in the State of Ohio where the authority of the Magistrate does not extend beyond the State of Ohio as his authority ends at the state line."

{¶32} "[3.] The trial court committed prejudicial error in allowing the Defendant-Appellee to appear by videoconference from the United Kingdom in England (sic) without proof that the Defendant-Appellee was not able to appear physically in person before the court where the testimony of Defendant-Appellee was largely unintelligible and the Plaintiff-Appellant's attorneys were not effectively able to cross-examine Defendant-Appellee without adequate video equipment for Defendant-Appellee to view and give testimony on the evidence and so that the court and the parties could view the demeanor of the witness to determine credibility."

{¶33} "[4.] The trial court commit[ted] prejudicial error in not considering the issues between the parties regarding Defendant-Appellee's abandonment of Plaintiff-Appellant in not allowing him to return to England to his gainful employment and to access his property in England and in not granting Plaintiff-Appellant a divorce on the grounds of abandonment where Defendant-Appellee caused Plaintiff-Appellant to remain in New York City where she knew he was unemployed and further erred in stating that there was evidence as to criminal convictions of Plaintiff-Appellant which were drug related and relevant to the divorce on the grounds for divorce when the facts show that Plaintiff-Appellant was denied entry to the United Kingdom solely because Defendant-Appell[ee] refused to sponsor him and reported erroneously that the parties were divorced."

{¶34} "[5.] The trial court committed prejudicial error by stating that there was insufficient evidence of Plaintiff-Appellant's property, by awarding an inequitable division

7

of marital property with parts of an Exhibit missing, an Exhibit with an 'x' drawn through the property description, property which was packed up in boxes by Defendant-Appellee and not identified with specificity and by ignoring Plaintiff-Appellant's testimony regarding property he had purchased. The trial court further erred by not enforcing the restraining order it had placed on the parties."

{¶35} In the first assignment of error, Moroney contends the magistrate erred by failing to swear in Pfeifer before he called her to testify as if on cross-examination.

{¶36} Evidence Rule 603, not cited by Moroney, provides: "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."

{¶37} At trial, the magistrate addressed the parties and asked whether there is "[a]nything that needs to be addressed before the witness [Pfeifer] is sworn in." In reply, counsel for Moroney asked if he could make an opening statement. Pfeifer was never put under oath and no objection, either oral or written, was ever raised with respect to the failure to do so.

{¶38} The Ohio Supreme Court has held: "The omission of administration of the oath to a witness in a trial or administrative hearing is waivable error." *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975), syllabus. Moroney waived the error by failing to object.

{¶39} The first assignment of error is without merit.

{¶40} In the second assignment of error, Moroney contends that the magistrate was without authority to allow Pfeifer to testify by video from the United Kingdom, since

8

the magistrate's authority "does not extend beyond the State of Ohio" and "ends at the state line."

**{¶41}** Moroney cites no authority for the proposition that a trial court, once it has established jurisdiction over the parties to a case, is limited in the exercise of that jurisdiction by the parties' presence within the court's territorial jurisdiction.

**{¶42}** Nothing in Ohio's Civil Rules expressly authorizes or prevents "a party residing in a foreign country to appear at trial and represent himself via live internet [or video] connection." *Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 92321, 2009-Ohio-5228, ¶ 23; *compare* Fed.R.Civ.P. 43(a) ("[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location"). "Accordingly, it is within the trial court's discretion whether to permit [a witness] to appear in such [a] manner." *Lisboa* at ¶ 23.

**{¶43}** In the present case, Pfeifer made the argument that problems with her visa made it advisable that she not travel outside of the United Kingdom and, in any event, was residing and working there at the time of trial. By use of the live video, Pfeifer appeared in open court and was subject to cross-examination. We find no abuse of discretion in allowing her to testify by videoconference. *Compare Beltran-Tirado v. Immigration and Naturalization Serv.*, 213 F.3d 1179, 1186 (9th Cir.2000) (finding no denial of due process by allowing an out-of-state witness to testify telephonically where the witness was sworn and subject to cross-examination).

**{¶44}** The second assignment of error is without merit.

**{¶45}** In the third assignment of error, Moroney challenges Pfeifer's video testimony on the grounds that her live testimony contradicts the reasons for testifying by

9

video set forth in her *Emergency* Motions. The Motions indicated that Pfeifer had issues with her work visa, but at trial Pfeifer testified: "I'm * * * out of the country at the moment, but I don't want to go back. So I did the video." Any discrepancy between Pfeifer's live testimony and the content of the *Emergency* Motions was a matter for the domestic relations court to resolve and, if deemed necessary, to sanction. Moroney made no motion for contempt or sanctions. The court took no action against Pfeifer. We find no error.

{¶46} Moroney also argues under this assignment of error that Pfeifer could not be effectively cross-examined on account of her not being physically present in court. Moroney cites to nineteen instances where the transcript of Pfeifer's testimony is inaudible or unintelligible. These gaps in the transcript, however, do not reflect on counsel's ability to cross-examine Pfeifer but, rather, the quality of the court's recording equipment. While portions of Pfeifer's testimony are transcribed as inaudible or unintelligible, there is no indication in the record that her testimony was inaudible or unintelligible to the court or the parties' attorneys. Likewise, portions of Moroney's testimony and the attorneys' questions are transcribed as inaudible or unintelligible. Moroney also cites to four instances where Pfeifer apparently had trouble viewing exhibits, but these instances are inconsequential and do not raise the possibility of prejudice.

{¶47} The third assignment of error is without merit.

{¶48} In the fourth assignment of error, Moroney contends the magistrate and domestic relations court erred by granting the parties a divorce on the grounds of incompatibility, rather than Pfeifer's abandonment of Moroney.

10

{¶49} "[I]t is well-settled that a trial court has broad discretion in determining the proper grounds for divorce and a reviewing court will not find otherwise absent an abuse of discretion." (Citation omitted.) *Rendina v. Rendina*, 11th Dist. Lake No. 2003-L-193, 2005-Ohio-4772, ¶ 23.

{¶50} In the present case, both parties admitted incompatibility as grounds for divorce in their Answers to the respective Complaint and Counterclaim. Incompatibility is a ground for divorce, "unless denied by either party." R.C. 3105.01(K). "When the parties agree on a ground for divorce, the court need not determine whether any other ground for divorce exists unless there is a showing that the existence of some other ground would affect 'the distribution of property, the award of sustenance alimony, the award of child custody, or otherwise to prejudicially affect the complaining party.'" (Citation omitted.) *Brokaw v. Brokaw*, 8th Dist. Cuyahoga No. 92729, 2010-Ohio-1053, ¶ 5; *Moser v. Moser*, 12th Dist. Warren No. CA2005-09-109, 2006-Ohio-5381, ¶ 29 (where a party admitted incompatibility, the court of appeals could not "say the trial court's decision to grant a divorce on the grounds of incompatibility rather than adultery was unreasonable, arbitrary, or unconscionable"); *Dagostino v. Dagostino*, 165 Ohio App.3d 365, 2006-Ohio-723, ¶ 19 (4th Dist.) (where a party admitted incompatibility and to living separate and apart, he was "not in a position to argue that the court's decision to grant a divorce on those grounds constitutes an abuse of discretion").

{¶51} The fourth assignment of error is without merit.

{¶52} In the fifth and final assignment of error, Moroney takes exception with the magistrate and domestic relations court's division of property.

11

{¶53} "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property," and "divide the marital and separate property equitably between the spouses." R.C. 3105.171(B).

{¶54} The division of marital property is entrusted to the broad discretion of the trial court. *Berish v. Berish*, 69 Ohio St.2d 318, 319-320, 432 N.E.2d 183 (1982). The trial court's factual findings with respect to the division of property will be upheld if supported by competent and credible evidence. (Citation omitted.) *Thorp v. Thorp*, 11th Dist. Trumbull No. 2010-T-0038, 2011-Ohio-1015, ¶ 28. The parties bear the burden of demonstrating the existence and value of marital property. *Wehrle v. Wehrle*, 10th Dist. Franklin No. 12AP-386, 2013-Ohio-81, ¶ 45; *Kautz v. Kautz*, 5th Dist. Stark No. 2011CA00034, 2011-Ohio-6547, ¶ 16.

{¶55} In the present case, Moroney presented the magistrate with the following list of "property bought during the marriage": Rings; iPod Touch; Black Pea Coat; Car Stereo; Bed; Couch; MacBook Pro Laptop; Nespresso Coffee Machine; Kitchen Aid Blender/Durabrand Blender/Stick Blender; Analon by Raymond Blanc Cookware[1]; Bookshelf; Mirrors; Custom Made Memory Foam Mattress; Bed Frame; Linens for Bed; 3rd Refrigerator; Memory Foam Pillow; and Samsung Flat Screen Television.

{¶56} As noted by the magistrate, there was limited evidence regarding the existence and location of these items, and absolutely no evidence with respect to their valuation. While Moroney claims that the evidence of the purchase of these items exists in England and is inaccessible to him, this fact is not a valid reason for reversing the lower court's judgment. The court may only rule on the evidence before it.

---

1. The cookware was expressly awarded to Moroney.

12

{¶57} Regarding several items, such as the rings, the parties presented conflicting evidence and it was within the competency of the magistrate and domestic relations court to resolve such discrepancies. Pfeifer gave testimony regarding several of these items. She testified the couch and the bed were purchased by a flat mate, while the television was purchased by Moroney and a flat mate and "has nothing to do with me." She testified Moroney had a digital camera, which was not mentioned in his list of marital and separate property. She acknowledged the foam pillow "probably" belonged to Moroney. Moroney testified regarding certain items, such as the MacBook, but provided no express testimony regarding the majority of the alleged marital property. Moroney accuses Pfeifer of lying during her testimony, but there is no evidence to substantiate the accusations.

{¶58} Given the record before us, we find no abuse of discretion in the magistrate's decision to award Moroney the property he claimed as his separate property in addition to the Analon Cookware.

{¶59} The fifth assignment of error is without merit.

{¶60} For the foregoing reasons, the Judgment Entry of Divorce, rendered by the Lake County Court of Common Pleas, Domestic Relations Division, terminating Moroney's marriage with Pfeifer, and dividing the marital estate, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

13