Robb, P.J.
{¶1} Appellant Ian Scicluna Laiviera (the father) appeals the judgment of the Monroe County Common Pleas Court changing an agreed parenting plan which had been incorporated into a West Virginia *463 divorce decree (and into a parenting order issued by a court in the country of Malta). The court granted "sole custody" of the child to Barbara Hise (the mother), eliminated the father's two to three months of annual parenting time in Malta, decreased the father's parenting time in the United States to two weeks per year, and ordered this parenting time to be supervised.
{¶2} The father contends the court violated his due process rights and abused its discretion in refusing his motion to appear at the hearing via telephonic conference and thereby denied him the opportunity to be heard and defend against the allegations. The father also argues the court's modification disregards the child's best interests and is based on misrepresentations.
{¶3} As the trial court applied a "good cause" test rather than a best interest test, this case must be remanded for application of the correct test, with additional instructions to set forth a specific analysis of the statutory best interest factors. Before the trial court can conduct such analysis, however, a new hearing must be conducted as the totality of the circumstances leads this court to conclude a new hearing is warranted where the father can appear live or electronically. The trial court's decision is therefore reversed, and the case is remanded for further proceedings in accordance with this opinion.
STATEMENT OF THE CASE
{¶4} The parties' child was born in March 2008. They were divorced in West Virginia in 2010. The December 10, 2010 divorce decree incorporated an agreement, including an agreement on parenting. The agreement provided: "The care and custody of the minor child is to be entrusted to both parties jointly. The parties agree that the minor is to reside with the wife. The parties agree that the minor['s] habitual place of residence is in the United States, presently at [a West Virginia address]." The father was provided with "free unlimited access whenever he is in the United States of America * * * to include overnight stays." The parties agreed the father "has the right to take the minor for a visit to Malta for a period of not less than 2 months and not exceeding 3 months annually" (once the child reached the age of 4.5). The father agreed "to return the child to his domicile in the USA" at the expiration of these visits.
{¶5} The mother agreed to allow and encourage regular contact with the father and to inform the father of the child's academic progress. Decisions on the child's education, including the choice of schools, were to be jointly made. As to passports, the agreement specified: "The father agrees to renew the child's American Passport, provided that the mother agrees to renew the child's Maltese passport." The agreement also required the father "to drop proceedings undertaken by him under the Hague Convention on the Civil Aspects of International Child Abduction after this agreement has been registered and ratified by the Maltese and United States judicial authorities."
{¶6} The child left the mother's residence on November 28, 2016 in order to embark on his annual visit to Malta. (In prior years, the annual Malta parenting time occurred during the summer months, but the mother began homeschooling the child that year.) The father did not return the child when expected in February 2017. A court in Malta issued a temporary order on February 2, 2017 stating the child would reside with the father.
{¶7} The underlying Ohio case was commenced on February 16, 2017, when the mother filed a petition to adopt a foreign order under R.C. 3127.35, asking the court to adopt the West Virginia custody order so it could be enforced and modified in *464 Ohio since the mother and the child had been residents of Ohio for years. The mother attached the 2010 agreement which had been incorporated into the divorce decree and a West Virginia judgment.[1] She also asked the court to order the father to return the child, contending he was in violation of the divorce decree by refusing to return the child at the expiration of his parenting time in Malta.
{¶8} On April 26, 2017, the Ohio court declined to accept jurisdiction. The decision showed the court considered: the case file ordered from West Virginia; the December 10, 2010 West Virginia divorce decree adopting the parenting agreement; the mother's 2014 West Virginia modification motion; and a Maltese court's decision to decline to exercise jurisdiction as to that motion.
{¶9} On July 13, 2017, the West Virginia court found jurisdiction in the United States under the Hague Convention and ruled the child must be returned to the United States forthwith. This order recited: courts in Malta and the United States concurrently entered a parenting order providing the child's primary residence was with his mother and providing parenting to the father in Malta; the father began exercising parenting time in Malta in December 2016 and retained the child longer than permitted; the father's petition to modify the parenting plan should be heard in the United States as the habitual residence of the child was in Woodsfield, Ohio; and the United States has superior jurisdiction over any pleading for modification.
{¶10} The Malta Civil Court (Family Division) conducted several hearings. On September 14, 2017, the court issued a decision in a 28-page document, containing a factual history and a recitation of the parties' arguments. The Maltese court concluded: the father wrongfully retained the child in Malta in breach of the mother's custody rights; the child's habitual residence is in the United States; and none of the exceptions in Article 13 of the Hague Convention were substantiated. The Maltese court ordered the immediate return of the child to the United States accompanied by the mother at the father's expense, ordered educational records to be forwarded, and recommended international mediation. The child was immediately returned to the mother who was in Malta at the time.
{¶11} On January 16, 2018, the mother filed various motions in the same Monroe County case number as the denied petition to adopt a foreign order. She filed a motion asking the Ohio court to assume jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), citing her residence with the child in Ohio, the father's residence in Malta, and their absence from West Virginia for over a year. She moved to modify the parenting plan by granting her "sole custody" and limiting the father's parenting time to two weeks per year of supervised visitation in the United States (during the last two weeks of June). See R.C. 3127.17(B) (allowing an Ohio court to modify the custody order of another state where the Ohio court has jurisdiction to make an initial determination under R.C. 3127.15(A)(1) or (2) and the child and parents do not presently reside in the other state); R.C. 3127.15(A)(1) (explaining how a court of this state has jurisdiction to make an initial determination in a child custody proceeding). The mother also asked the court to adopt the findings, conclusions, *465 and orders of the Malta Civil Court (9/14/17) and the Family Court of Tyler County, West Virginia (7/13/17).
{¶12} The Ohio court scheduled a hearing for April 5, 2018.[2] The mother filed a request for a continuance (which the father intended to join). The court granted the motion on February 28, 2018 and rescheduled the hearing for April 12, 2018. On March 14, 2018, the father filed a motion seeking permission to appear at the hearing by telephonic conference (at which a notary would verify his identity). He disclosed he was of "modest economic means" and recently incurred costs making it financially impossible for him to afford to travel from Malta to Ohio for the hearing. The court denied the motion on March 15, 2018.
{¶13} On March 19, 2018, the father filed a response to the mother's motions. He agreed to the history supporting the motion to transfer jurisdiction to Ohio but objected to the mother's proposed amendments to the parenting plan. He disputed that he violated the Parental Kidnapping Prevention Act, noting that he availed himself of the Hague Convention by filing a petition to keep the child in Malta, which was eventually denied by the Maltese court as the court found the exceptions for the protection of a child were inapplicable. He pointed to his receipt of a temporary order from the Maltese court on February 2, 2017 (at the time of the originally scheduled return date), allowing him to retain the child until the proceedings were concluded. He returned the child to the mother immediately upon the final Maltese ruling, which he agreed not to appeal.
{¶14} The father emphasized the final decision by the court in Malta was not a ruling on the merits of the mother's modification request, and he urged the child's best interests would not be served by eliminating the child's annual visit to Malta or by decreasing and restricting parenting time. Summarizing evidence presented in Malta, the father's response also stated: the father, the mother, and the child moved to the father's home country of Malta after the child was born in West Virginia in 2008; half of the child's family lives in Malta; the mother brought the child to the United States for a summer vacation in 2009 but failed to return; the father filed a child abduction petition under the Hague Convention; the mother initiated divorce proceedings; the parties entered the 2010 parenting agreement providing joint custody, which was ratified in a Maltese court in July 2010 and in a West Virginia divorce decree in December 2010; the mother impeded his parenting time some years; educational disagreements occurred (including the mother's withdrawal of the child from school to begin homeschooling after the school refused to ban the child from communicating with the father online); the mother alienated the child from the father; and a child psychologist in Malta disagreed with the mother's claim that the child was autistic.
{¶15} On April 2, 2018, the father filed a reply to the denial of his motion to appear by telephonic conference containing a request to reconsider and to allow him to participate via Skype, video conference, or any other means. He also submitted final *466 arguments, including: his receipt of the temporary order in Malta lessened his culpability for retention of the child as the decision was not his unilateral decision; the mother had access to the child while that case was pending; the mother's motion was vindictive; and the court should not punish a father by denying a child adequate parenting time or the ability to visit the country where the child has dual citizenship.
{¶16} The hearing proceeded without the father's participation on April 12, 2018. The mother testified she and the child resided in Woodsfield, Ohio for nearly two years. She testified the father's last parenting time was intended to be two months in the winter of 2016-2017, during which he said he was adding a month. Although he was permitted up to three months for the child's Malta visit, she protested as they planned closer to two months that year. She noted he advised her of the February 2017 Maltese court order. She went to Malta for hearings and was present when the father was ordered to return the child. (Tr. 9-10).
{¶17} The mother recognized the agreed parenting order provided shared parenting with two to three months of parenting time in Malta per year (during which the father was not required to pay child support); she called herself the "residential primary caretaker." (Tr. 15, 27). She was opposed to the child returning to Malta because of the father's recent failure to return the child, stating she no longer trusted the father. (Tr. 15, 18). While the child was in Malta, she was concerned the father would "run to" the neighboring country of Italy. (Tr. 18-21). She was also concerned the father would abscond with the child if he visited with the child in the United States without supervision. (Tr. 22). She noted the father turned over the child's American and Maltese passports to her upon receiving the Maltese court's order to return the child. She claimed the father obtained the Maltese passport without her signature or knowledge, expressing concern he could do so again. (Tr. 18-20). The mother testified the child's maternal grandmother agreed to allow supervised visitation to occur at her home. (Tr. 23). She said the father stayed there three times in the past when visiting the child. (Tr. 23-25).
{¶18} The mother explained the child communicated electronically with the father two days a week and has also communicated with extended family members in Malta, such as the paternal grandparents, a cousin, a great uncle, and his step-mother. (Tr. 10, 15). She estimated the conversations ranged from 10 to 40 minutes depending on the child's mood, mentioning the child was autistic and cannot focus at times. (Tr. 14).
{¶19} During one of the first calls after the child returned from Malta, the mother heard the child ask the father why he wanted the child to call Children Services. The father told the child he had rights but then said he was sure the mother would be nice. (Tr. 12-13). She said the father blamed her for his act of keeping the child in Malta. (Tr. 11-12). She also believed the father should not embarrass the child by asking about a habit they were trying to eliminate. (Tr. 11). She testified the father was behind in child support, which was 300 euros per month; he made the payments for February and March 2018 but failed to pay from mid-September 2017 through January 2018. (Tr. 26-27).
{¶20} On May 8, 2018, the Monroe County Common Pleas Court issued an "order adopting findings, conclusions, and order of the Malta Civil Court and modifying the current parenting plan." The court found it had jurisdiction as the mother resided with the child in Monroe County for more than six months and Ohio was the *467 child's home state. The court stated the Malta court "issued an order, incorporated herein by reference, making the following conclusions": the father wrongfully retained the child in Malta in breach of the mother's custody rights; the child has his habitual residence in the United States; and the exceptions in Article 13 of the Hague Convention were not substantiated. The court found "good cause" to modify the parenting plan based on the father's conduct in violation of the Hague Convention.
{¶21} The court granted the mother "sole custody." The father's parenting time was limited to two weeks per year (restricted to a two-week period beginning on Father's Day) and was to be supervised in the United States. This supervised parenting time could occur either at the maternal grandmother's residence in West Virginia or in Ohio at the father's expense with the mother's prior approval of the location and the individual supervising. (This term was contained in an amended order on May 21, 2018 as the May 8, 2018 order provided supervised visitation in Ohio but the grandmother lived in West Virginia {a one hour drive from the child's home}; and, the original order did not provide an alternative to the grandmother's supervision.)
{¶22} As for communication with the child, the court provided the father with electronic communication at 5:00 p.m. on Wednesdays and Sundays (with additional time only on the child's birthday and either Christmas Eve or Christmas Day). The order states the child can initiate additional communication with his father if the child wished. Although no testimony about a therapist or treatment was provided by the mother at the hearing, the order states: "The terms of this parenting plan can be modified to increase father's access and interactions with the child based upon the recommendations of the child's therapist and the child's progression in treatment."
{¶23} The father filed timely notice of appeal. The father does not contest the Ohio court's decision to exercise jurisdiction under the UCCJEA but raises issues with: the denial of his motion to participate in the hearing by telephone or video conference; misrepresentations by the mother and her attorney; and the child's best interests.
{¶24} Initially, we address the mother's contention that the father's appeal is frivolous and should be dismissed because he cites factual allegations that he did not place into the record below by appearing at the hearing. Besides citing an inapplicable statute on international commercial arbitration, the mother's brief notes a party cannot support his appellate arguments by relying on facts that were not placed into the record before the trial court. See McAuley v. Smith , 82 Ohio St.3d 393, 396, 696 N.E.2d 572 (1998) ("A reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal based on the new matter."). However, we do not dismiss an entire appeal merely because some appellate arguments incorporate facts not presented at trial.
{¶25} Clearly, a court's decision denying a party's motion to appear at trial by telephone does not become unreviewable because that party did not thereafter appear at the custody hearing. Furthermore, a trial court that is ruling on the motions of one parent (for termination of shared parenting, sole custody, and limitations on parenting time) must still apply the proper tests and consider a child's best interests, even if the other parent could not attend the custody hearing.
*468 DENIAL OF MOTION TO APPEAR AT HEARING BY ALTERNATIVE MEANS
{¶26} The father contends he was not provided a fair opportunity to be heard in violation of the right to due process. He states the court abused its discretion in denying his motion to appear telephonically and his subsequent motion to appear by any electronic means. He concludes the court's denial of his request for alternative means of participation in the hearing was unsympathetic and provided a one-sided presentation of the evidence. He states he could not afford to travel the long distance from Malta to Ohio for the hearing or to hire an attorney to represent him at the hearing. He emphasizes the importance of the issue in the case: a child's best interests. He also points to alleged misrepresentations by the mother and her attorney which he could not counter due to his absence, which allegations are discussed further infra.
{¶27} The right to procedural due process encompasses the opportunity to be heard when the state seeks to infringe a protected liberty or property right. City of Youngstown v. Traylor , 123 Ohio St.3d 132, 2009-Ohio-4184, 914 N.E.2d 1026, ¶ 8, citing the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. See also Armstrong v. Manzo , 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (due process requires the opportunity to be heard at a meaningful time and in a meaningful manner). Yet, due process is a flexible concept. Traylor , 123 Ohio St.3d 132, 914 N.E.2d 1026 at ¶ 8.
{¶28} We note Appellant was not prohibited from attending the hearing by an affirmative court order in this case or even by some type of government action. "[T]here is no absolute due process right to attend the trial of a civil action." Miklas v. Miklas , 7th Dist. No. 14 BE 46, 2015-Ohio-3829, 2015 WL 5522021, ¶ 16 (no constitutional right to be provided counsel in civil proceedings or to demand court assistance in participating in civil trial during incarceration). The trial court has "inherent power to regulate the court proceedings and supervise the functions of the court." State ex rel. Butler v. Demis , 66 Ohio St.2d 123, 128, 420 N.E.2d 116 (1981).
{¶29} We review a trial court's decision on whether to allow telephone or video testimony for an abuse of discretion. Miklas , 7th Dist. No. 14 BE 46 at ¶ 12. See also Moroney v. Pfeifer , 11th Dist. No. 2013-L-051, 2013-Ohio-5653, 2013 WL 6809648, ¶ 43 (finding the court did not abuse its discretion by allowing the wife to testify at the divorce trial by live video where she claimed issues with her visa made it advisable she not travel outside of the United Kingdom where she was residing and working); Lisboa v. Lisboa , 8th Dist. No. 92321, 2009-Ohio-5228, 2009 WL 3155135, ¶ 23. A court abuses its discretion if it issues a decision that is unreasonable, arbitrary, or unconscionable. AAAA Ents., Inc. v. River Place Community Urban Redev. Corp. , 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision is one that cannot be supported by any sound reasoning process. Id. An arbitrary decision is one made without consideration of or regard for facts or circumstances. State v. Beasley , 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12. An unconscionable decision is often defined as "affronting the sense of justice, decency, or reasonableness." State v. Waugh , 10th Dist. No. 07AP-619, 2008-Ohio-2289, 2008 WL 2025852, ¶ 13, quoting Black's Law Dictionary 1561 (8th Ed.2004).
{¶30} The mother has invoked the UCCJEA in this case. As aforementioned, an Ohio court can modify the custody order of *469 another state where the Ohio court has jurisdiction to make an initial determination under R.C. 3127.15(A)(1) or (2) and the child and parents do not presently reside in the other state. R.C. 3127.17(B). See also R.C. 3127.15(A)(1) (containing the test for determining if a court of this state has jurisdiction to make an initial determination in a child custody proceeding).
{¶31} Pursuant to the UCCJEA, "a party to a child custody proceeding may offer testimony of witnesses who are located in another state, including testimony of the parties and the child, by deposition or other means allowable in this state for testimony taken in another state." R.C. 3127.10(A). See also R.C. 3127.01(B)(4) (defining child custody proceeding). "A court of this state may permit an individual residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means before a designated court or at another location in that state. A court of this state shall cooperate with courts of other states in designating an appropriate location for the deposition or testimony." R.C. 3127.10(B). We recognize Appellant was not seeking to testify from another state within this country and the statute contains permissive, rather than mandatory, language as to the taking of testimony by phone or video conference.
{¶32} In Miklas , we adopted a list of factors to determine if a court abused its discretion in refusing to permit a prisoner to participate at a post-divorce proceeding (either by issuing a warrant for conveyance or by permitting participation through alternative means such as telephone or video conference ). Miklas , 7th Dist. No. 14 BE 46 at ¶ 13, 15. See also Shepard Grain Co. v. Creager , 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392, ¶ 18, 22 (2d Dist.) (reversing for a new hearing in a civil suit seeking $1,200 in funds stolen by an inmate, opining "a trial court should consider innovative, alternative ways for the prisoner to participate in the action, such as telephone conference calls * * * especially if the prisoner suggests an alternative means for participation"), citing Laguta v. Serieko , 48 Ohio App.3d 266, 267, 549 N.E.2d 216 (9th Dist.1988) and Elkins v. Elkins , 4th Dist. No CA98-03-019, 1999 WL 939 (Jan. 4, 1999).
{¶33} Some of these factors would also be relevant in considering a non-prisoner's request to present testimony by telephone or video conference, including: whether the party is capable of conducting an intelligent and responsive argument; the cost to attend the hearing; the substantiality of the issue; the possibility of delaying trial until the party can attend; the probability of success on the merits; and the party's interest in presenting testimony in person rather than by deposition.
{¶34} Unlike a prisoner, it was not a government order precluding the father from attending; i.e., he was not physically denied access by the court's failure to grant his motion. Rather, the father states he could not afford to travel to this country to attend the hearing and could not afford counsel to represent him at the hearing. Compare Lisboa , 8th Dist. No. 92321 (where the father offered to pay for the technology for the court but did not hire an attorney). Ability to pay for travel is a reasonable consideration when ruling on the request of a distant party who seeks to participate via alternative means.
{¶35} The Eighth District ruled on a case where the father could not appear for a hearing (on cross-contempt motions and a motion to eliminate electronic communications between the father and the child) because the father was prohibited by a deportation order from entering the country. The court concluded: although the civil rules make no provision for a party residing in a foreign country to appear at trial *470 and represent himself via live internet connection,[3] it was within the trial court's discretion whether to permit the father to appear in this manner. Lisboa , 8th Dist. No. 92321 at ¶ 23. The court found no abuse of discretion by the trial court's denial of the request to participate through online communications. Yet, the record in Lisboa demonstrated the court administrator advised the trial judge they lacked the technology for conducting such a hearing. Id. at ¶ 25. Here, the record does not indicate the reason for the court's denial of the father's request.
{¶36} As for the civil rules, we note Civ.R. 40 provides: "All of the testimony and such other evidence as may be appropriate may be presented at a trial by video recording, subject to the provisions of the Rules of Superintendence." In addition, Civ.R. 32 allows for a deposition to be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, if the court finds "upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." Civ.R. 32 (A)(3)(g). See also Sinkovitz v. Sinkovitz , 4th Dist., 2016-Ohio-2861, 64 N.E.3d 382, ¶ 24 (a court's ruling that it would accept a deposition of an incarcerated party was an adequate alternative means of participation where the request to participate by telephone was denied). Here, the father was not provided the option of presenting a deposition, and the father may not have anticipated some of the mother's testimony, including her claim that he unilaterally obtained a Maltese passport for the child.
{¶37} We acknowledge: the mother asked the trial court to adopt the order of the court in Malta which contained factual statements and the parties' arguments to that court; the father did not seem to protest the court's consideration of the information within the Malta court's order (except to the extent the mother suggested the order required the granting of her modification motion); and the court purported to adopt the Malta order, which recited some of the information the father wished to provide to the court. However, considering the totality of the circumstances discussed throughout this opinion, we find the trial court's denial of permission to appear at the hearing by alternative means was unreasonable and also appeared to be arbitrary.
{¶38} The matter at issue was substantial and affected a child's relationship with his father and his paternal relatives. The mother not only asked the court to adopt a foreign judgment finding the father wrongfully retained the child in Malta in violation of the mother's custody right but also asked the court to terminate shared parenting, grant her sole custody, eliminate Malta parenting time, severely limit parenting time to a single two-week period per year, and impose only supervised parenting time.
{¶39} The father had a great interest in providing testimony to refute the mother's claims, explain his actions, and make assurances for the future. The court's perception of the father's credibility would have been a primary determinant of the matter before the court. The father's filings in the trial court show he was capable of presenting coherent arguments. There was some likelihood of success, at least as *471 to some of the limitations imposed on parenting time; for instance, he could have refuted the mother's allegations about the Maltese passport.
{¶40} Internet communication is now more common than at the time of the Lisboa case, and unlike Mr. Lisboa, the father did not only seek to participate by internet; rather, he alternatively asked to participate by telephone conferencing, which is less technologically advanced. There is no indication the court lacked the facilities for such communication. The father did not live in the United States. He was a citizen and resident of Malta, a European island country in the Mediterranean Sea. The father was unrepresented by counsel and could not afford to hire an attorney. There is no indication a continuance would have assisted the father's financial situation (whereas the father in the Lisboa case offered to pay for the equipment needed by the court).
{¶41} The UCCJEA (applicable to a person in another state) does not indicate an affidavit of financial difficulty is required in order to present a deposition or seek to testify by telephone or other means. See R.C. 3127.10(A) - (B) ("A court of this state may permit an individual residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means before a designated court or at another location in that state. A court of this state shall cooperate with courts of other states in designating an appropriate location for the deposition or testimony."). A parent living abroad presents more compelling circumstances considering the continuing jurisdiction in custody cases and the financial burden on the mere exercise of parenting time.
{¶42} We hereby remand for a new hearing where the father can appear to present live testimony or the father can participate by alternative means with the trial court choosing between telephone conferencing or internet (video or mere verbal) conferencing. This decision is supported by the fact that we must remand in any event due to the application of the wrong test as explained below. Before doing so, we review some of the father's other arguments.
Misrepresentations
{¶43} The father contests certain testimony by the mother and representations by her attorney, which he contends were incorrect and misleading. For instance, he complains the mother testified he told her in February 2017 that he "had a court order in Malta allowing him to keep [the child] in Malta indefinitely." (Tr. 8). In response, he points out the February 2, 2017 order was a temporary order. Nonetheless, this would not demonstrate the contested statement was "false testimony." First, this was what the mother claimed the father told her; not what the order actually stated. Regardless, the contested statement could merely be her characterization of an order with no set end date. The temporary nature of this order was discussed in the September 14, 2017 decision of the Malta court utilized by the trial court herein, the content of which was relied upon by both parties.
{¶44} Next, the father discusses the mother's testimony about her concern the father could abscond with the child if he were permitted to exercise parenting time in the United States without supervision. (Tr. 22). We cannot consider factual evidence (the mother's signature on the child's 2009 Maltese passport application) attached to Appellant's citation to additional authorities, which this court previously ordered stricken. We review the record and any relevant legal authorities. After stating the father turned over the child's American and Maltese passports to her pursuant to the Maltese court's 2017 order *472 to return the child, the mother claimed the father obtained the Maltese passport without her signature or her knowledge, expressing concern he could do so again. (Tr.18-20). Counsel thereafter emphasized this contention by urging the court to consider "the testimony my client provided regarding the issue of the Maltese passport being able to be obtained without her signature." (Tr. 31). The father points to Maltese law requiring the consent of both parents. Moreover, the 2010 parenting agreement reveals the mother knew the child already had a Maltese passport as she agreed to "renew" the Maltese passport in exchange for Appellant's agreement to renew the American passport.
{¶45} The father also disputes the mother's claim that he "violated international law" and her belief that he used the proceedings in an attempt to forum shop. (Tr. 18). He points out he had a temporary order from Malta, and he states the Hague Convention anticipates these occurrences, characterizing the September 14, 2017 decision from the court in Malta as a mere ruling that he failed to prove the exceptions to Article 13 of the Hague Convention. The father contends the mother's attorney claimed that all matters were addressed in the proceedings in Malta and the attorney suggested the Malta court's finding of wrongful retention should be adopted as a definitive ruling that the mother should have sole custody or that visits in Malta should discontinue. The mother's motion does seem to suggest the mere existence of the decision from Malta means the requested modification should occur. However, the suggestion was the mere opinion of the mother that because of his retention of the child (with no reasonable excuse under the Hague Convention's exceptions), he can no longer be trusted to have joint custody, exercise parenting time in Malta, or exercise parenting time in America without supervision.
{¶46} The court was not bound by her argument. As the father states, the decision from Malta did not rule on whether custody should remain joint or be awarded solely to the mother or purport to make a ruling that the mother had sole custody; nor did it modify parenting time under the agreed parenting order incorporated into a West Virginia divorce decree. In summary: "A Hague Convention case is not a custody case." Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges, Federal Judicial Center International Litigation Guide (2012) ix, citing 42 U.S.C. § 11601(b)(4) (which provides the Convention empowers courts "to determine only rights under the Convention and not the merits of any underlying child custody claims.").
{¶47} Relying on these alleged misrepresentations and other facts, the father contends the trial court's decision disregarded the child's best interests.
BEST INTERESTS
{¶48} In contesting the decreased and restricted parenting time and the elimination of joint custody with "sole custody" being granted to the mother, the father contests the trial court's decision on the child's best interest. (The father does not argue any other tests apply to the court's decision). The West Virginia divorce decree said the parties agreed the child "would reside predominantly with the mother" with the father exercising extended parenting time. The parenting agreement incorporated into the divorce decree stated the child was to reside with the mother and the child's "habitual place of residence" was the United States, language related to the international convention.
*473 {¶49} A term discussing a child's physical location and living arrangement is a different topic than allocation of parental rights and responsibilities. See R.C. 3109.04(G). See also R.C. 3109.04(A)(1) (where a court is not adopting a shared parenting plan, "the court shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child"). Furthermore, the parenting agreement, which was expressly incorporated into the West Virginia divorce decree, gave the parties joint custody as it provided "[t]he care and custody of the minor child is to be entrusted to both parties jointly"; the father was granted unlimited access while in the United States; and he was not required to pay child support while the child was living with him in Malta up to three months a year.
{¶50} Once an Ohio court agrees to exercise jurisdiction under the UCCJEA, which is not contested here, the court applies Ohio law to the modification of an out-of-state custody order. Sayre v. Furgeson , 3rd Dist., 2016-Ohio-3500, 66 N.E.3d 332, ¶ 15. Joint custody, as the term was formerly used in Ohio and as the term is used by other states, is considered equivalent to shared parenting. Id. at ¶ 25. See also R.C. 3109.041(B) (a custody decree issued pursuant to R.C. 3109.04 prior to April 11, 1991 that "granted joint care, custody, and control of the children to the parents" is "subject to modification or termination pursuant to section 3109.04 of the Revised Code as that section exists on and after April 11, 1991"); R.C. 3109.041(C) ("As used in this section, 'joint custody' and 'joint care, custody, and control' have the same meaning as 'shared parenting'.").
{¶51} The terms of a shared parenting plan incorporated into a divorce decree can be modified if the modification is in the child's best interests. R.C. 3109.04(E)(2)(b). The mother asked for modification of the plan which the court granted. However, she requested sole custody where the order provided joint custody. In granting her request, the trial court's decision was akin to the termination of shared parenting as the father had joint care and custody, but the court eliminated this by granting the mother "sole custody" and imposing supervised parenting time. The mother's brief concedes the trial court's order terminated shared parenting.
{¶52} "The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c). "The decision to terminate a shared parenting plan is governed by R.C. 3109.04(E)(2)(c) and must, in every instance, be made in the best interest of the child." Mogg v. McCloskey , 7th Dist. No. 12 MA 24, 2013-Ohio-4358, 2013 WL 5503156, ¶ 20. In other words, "the trial court should utilize the best interest standard in determining whether to terminate a shared parenting agreement." Patrick v. Patrick , 7th Dist. No. 17 CA 0913, 2017-Ohio-9380, 2017 WL 6813291, ¶ 23 (even in a case originally involving a jointly submitted plan[4] ).
*474 {¶53} As to the relevant factors, the statute provides: "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following [ (F)(2) ] factors" thereafter listed. R.C. 3109.04(F)(2). A determination as to whether shared parenting is in the child's best interest includes a decision whether to continue or terminate shared parenting. See Mogg , 7th Dist. No. 12 MA 24 at ¶ 21. Moreover, upon the termination of a shared parenting decree, the court is to proceed as in the case of an original allocation of parental rights and responsibilities. R.C. 3109.04(E)(2)(d). Reading division (E)(2)(d) with (F)(1), the allocation decision subsequent to termination of shared parenting also requires the consideration of the (F)(1) best interest factors. See R.C. 3109.04(F)(1) ("In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to" those thereafter listed).
{¶54} The best interest factors in R.C. 3109.04(F)(1) include: (a) the parents' wishes; (b) the wishes and concerns of the child if the court interviewed the child in chambers; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate court-approved parenting time; (g) failure to make all court-ordered child support payments, including arrearages; (h) whether a parent or a household member has been convicted of certain criminal offenses, a parent was found to be the perpetrator in an adjudication of an abused or neglected child, or there is reason to believe a parent acted in a manner resulting in a child being an abused or neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (j) whether either parent established, or is planning to establish, a residence outside of this state.
{¶55} In addition to the above (F)(1) factors, the additional factors in (F)(2) to be considered in determining whether to continue shared parenting include: (a) the ability to cooperate and make decisions with respect to the child jointly; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) any history of, or potential for, child abuse, *475 spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) the geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and (e) the guardian ad litem's recommendation (if one was appointed). R.C. 3109.04(F)(2)(a)-(e).
{¶56} Thereafter, in determining parenting time matters, the court shall consider the following list of factors presented in R.C. 3109.051(D) : (1) the prior interaction and interrelationships of the child with the child's parents, siblings, and other relatives; (2) the geographical location of the residence of each parent and the distance between them; (3) the time available to the child and the parents, including holiday and vacation schedule, each parent's employment schedule, and the child's school schedule; (4) the child's age; (5) the child's adjustment to home, school, and community; (6) the child's wishes and concerns if the court has interviewed the child; (7) the child's health and safety; (8) the amount of time available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; (11-12) involving certain convictions or adjudications or reason to believe a parent acted in a manner resulting in a child being an abused or neglected child; (13) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with a court order; (14) whether either parent has established or is planning to establish a residence outside this state; (15) in a case seeking non-parental companionship, the parents' wishes and concerns as expressed by them to the court; and (16) any other factor in the child's best interest.
{¶57} In discussing best interests, the father states his retention of the child was not as extreme as the mother portrays, especially considering a Malta court provided him a temporary order regarding his custody of the child. He notes Malta is a European country and a member of the Hague Convention. Although another Malta court found against him on the exceptions to Article 13 of the Hague Convention on a parent's retention of a child, he urges his loss in that court did not justify the subsequent Ohio decision to punish him with loss of joint custody and parenting time in Malta and major limitations on parenting time in the United States. In an effort to lessen his culpability for his retention of the child in Malta, he also points to a statement in the May 7, 2014 West Virginia judgment (filed in the Ohio case by the mother when she first initiated this action): "It is the further ORDER of this court that any changes in the length of stay in Malta would again sound in modification requiring rulings upon matters not before this court and that said modification matters, if filed, would necessarily need to be made before this court and as well as the Malta court, if not primarily the Malta Court."
{¶58} The father regrets that he did not file jointly in the United States at the same time he filed proceedings in Malta. He characterizes the retention in Malta as his honest attempt to ensure his child's best interests and suggests his procedural attempt does not mean he cannot be trusted to abide by the parenting agreement or the court's orders in the future. He believed the child needed structure and socialization and protested the mother's unilateral decision (in violation of the parenting agreement incorporated into the divorce decree) to withdraw the child from school and begin homeschooling in the months prior to the child visiting Malta in 2016. The Malta decision shows the father *476 obtained a psychological evaluation of the child when the child visited that last time. The father discounts the mother's statement that the child is autistic, noting the Malta evaluation opined this was unlikely. He states the mother shows animosity toward him and has attempted to alienate the child from him and limit communications with him. He points to the original child abduction proceeding instituted by him when the mother left Malta with the child and to her refusal to allow the child to visit Malta in the year after the agreement granted such parenting time. The father concludes the decision denies the child a nurturing relationship with the father and prevents his extended family from seeing the child. He characterizes the decision as extreme and asks the trial court to reinstitute the provisions in the parenting agreement and divorce decree providing for joint custody with two to three months in Malta and overnight unsupervised stays if the father visits the United States, noting he would have no access to the child's passport while visiting this country.
{¶59} As aforementioned, the mother complains the father cites to facts outside the record, and some of his allegations may be outside of the record. However, many of his claims are contained in the Malta order which the trial court "adopted" as requested by the mother.
{¶60} We review custody and parenting time decisions for an abuse of discretion. See, e.g. , Davis v. Flickinger , 77 Ohio St.3d 415, 421, 674 N.E.2d 1159 (1997). We discussed the general parameters of this standard of review supra, noting the trial court has broad discretion. A court abuses its discretion if it issues a decision that is unreasonable, arbitrary, or unconscionable. AAAA Ents. , 50 Ohio St.3d at 161, 553 N.E.2d 597. An unreasonable decision is one that cannot be supported by any sound reasoning process; an arbitrary decision is one made without consideration of or regard for facts or circumstances, and an unconscionable decision affronts one's sense of justice, decency, or reasonableness. Beasley , 152 Ohio St.3d 470, 97 N.E.3d 474 at ¶ 12 ; AAAA Ents. , 50 Ohio St.3d at 161, 553 N.E.2d 597 ; Waugh , 10th Dist. No. 07AP-619 at ¶ 13.
{¶61} However, the trial court's application of a test other than the child's best interest requires remand and precludes our review for discretion on the best interest factors where such factors do not appear to have been considered in the first instance. "[W]e cannot address the application of the best interests factors to this case if the trial court did not apply that test in the first instance." Redmond v. Davis , 7th Dist. No. 14 CO 37, 2015-Ohio-1198, 2015 WL 1419509, ¶ 66. There is no statutory mandate that a trial court must separately address each of the best interest factors, and we presume the court considered the factors absent evidence to the contrary. Id. at ¶ 69-73, citing In re Henthorn , 7th Dist. No. 00BA37, 2001 WL 1539606 (Nov. 28, 2001). The key modifier is: "absent evidence to the contrary." That is, we will not presume the trial court considered the factors where there is evidence to the contrary of such a presumption. Id. at ¶ 70, citing In re J.K. , 7th Dist. No. 14CA899, 2014-Ohio-5502, 2014 WL 7142540, ¶ 30-32.
{¶62} Where we cannot ascertain whether the court employed the best interest test and considered the best interest factors and where there are indicators the court did not apply the test, this court remands for explicit application of the best interests test and adds an instruction for the trial court to additionally explain the reasons underlying the judgment in order to fully evince its consideration of the child's best interest by applying the statutory *477 factors. Redmond , 7th Dist. No. 14 CO 37 at ¶ 71, 77, citing In re J.K. , 7th Dist. No. 14CA899 at ¶ 2, 32, 37, citing In re Bell , 7th Dist. No. 04NO321, 2005-Ohio-6603, 2005 WL 3388209 at ¶ 55-56. "Although specific factual findings as to the relevant statutory factors are not required in an original order, such specification is a proper instruction on remand from an order where it could not be presumed that the court originally applied the factors." Redmond , 7th Dist. No. 14 CO 37 at ¶ 71.
{¶63} In Redmond , the entry did refer to the child's best interests twice; when read in context, however, we could not conclude the entry evinced that the trial court considered the statutory best interest factors in determining which party should be awarded custody. Id. at ¶ 72-77. Here, the entry does not use the term "best interest" at all and instead uses the term "good cause" (three times) to support the decision to provide "sole custody" to the mother, eliminate parenting time in Malta, and impose two weeks of supervised parenting time in Ohio or at the child's maternal grandmother's house in West Virginia.
{¶64} Because there is evidence suggesting the trial court did not apply the statutory best interest test, this court need not presume the court considered the factors. Id. at ¶ 70 ; In re J.K. , 7th Dist. No. 14CA899 at ¶ 30-32 ; In re Bell , 7th Dist. No. 04NO321 at ¶ 55-56. This case must therefore be reversed and remanded for application of the statutory best interest test pertaining to each action being taken by the trial court with additional instructions to specifically make findings as to the relevant best interest factors.
{¶65} Finally, we reiterate that our orders here are based upon the totality of the circumstances discussed above and also including: the minimal testimony on the child's life presented at the hearing; the mother's attorney only spoke of the child's best interest when it came to supervised visitation; the mother and her attorney gave the trial court the impression that the father's concerns as to Malta parenting time or shared parenting were "already addressed extensively in the Malta Court's findings" as if it were res judicata on the modification issues; the trial court thereafter adopted the Malta order and issued its allocation and parenting time orders in reliance thereon; and the trial court appeared to have presided at the hearing with the impression the test was good cause.
{¶66} For the foregoing reasons, this case is reversed and remanded for a new hearing where the father can appear to present live testimony or present testimony by alternative means. Thereafter, the trial court must apply the best interest test; and due to the application of the incorrect test in the judgment on review, the trial court is additionally instructed to set forth a specific analysis of the statutory best interest factors.
Donofrio, J., concurs.
Waite, J., concurs.

The mother attached a May 8, 2014 order in a contempt proceeding against her, wherein the West Virginia court noted the mother could not argue for a shorter Malta visit in the contempt action against her as she had not filed a motion seeking modification.

After the court sent notice of the hearing to the father's former attorney, this attorney filed a notice of non-representation and attached a February 8, 2018 West Virginia order in which the court stated: the mother asked West Virginia to transfer jurisdiction to Ohio; the pro se father filed a response stating he had no objection to the transfer; the transfer request was not ripe as there was no modification motion before the court; and West Virginia would not have exclusive jurisdiction if Ohio makes a residency determination.

Compare Fed.Civ.R. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").

Some courts interpret R.C. 3109.04(E)(2)(c) to mean a motion to terminate filed by only one parent where the original shared parenting plan was jointly submitted under (D)(1)(a)(i) is itself enough to terminate shared parenting without considering the best interest factors in (F)(2); whereafter, the court would proceed as if on an original allocation considering the best interest factors in (F)(1). See, e.g. , Sayre , 3rd Dist. at ¶ 33-34. However, as in Mogg and Patrick , this court does not read the statute in this limited manner and applies the (F)(2) factors to the termination of shared parenting even where the plan was originally jointly submitted. See also Kougher v. Kougher , 194 Ohio App.3d 703, 2011-Ohio-3411, 957 N.E.2d 835, ¶ 2-3, 18, 22 (7th Dist.). In any event, the mother termed her request as modification of the parenting plan, and the court terminated shared parenting when it eliminated joint custody and granted sole custody. See R.C. 3109.04(E)(2)(c) (if modification is requested, the court may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children). Plus, as will be explained, a remand is required as the trial court here did not apply any best interest test (and all best interest tests allow the consideration of any other relevant factors, which could include those in (F)(2) relating to the termination of shared parenting).